Virginia FLATT et al.

v.

JOHNS MANVILLE SALES CORP. and Certain-Teed Corp.

No. M–79–39–CA.

United States District Court,
E. D. Texas,
Marshall Division.

April 25, 1980.

G. Luke Ashley of Thompson & Knight, Dallas, Tex., argued on behalf of defendant Johns Manville, in addition to submitting a brief to the Court opposing the application of collateral estoppel.

Jack Flock, Tyler, Tex., for defendant Certain-Teed.

Rex Houston, Henderson, Tex., argued for plaintiffs at the hearing the Court conducted on the plaintiffs' motion for partial summary judgment.

## MEMORANDUM OPINION AND ORDER

ROBERT M. PARKER, District Judge.

Plaintiffs have brought this products liability action contending that exposure to cement pipes which contained asbestos was a producing cause of Alvin Flatt's incapacity and ultimate death due to mesothelioma, a cancerous tumor of the membrane which lines the chest cavity. The cement pipes in question were manufactured by defendants Johns Manville and Certain-Teed and sold to East Texas Salt Water Disposal Company, decedent's employer from the mid 1940's until 1978. Plaintiffs contend that the cement pipes containing asbestos as manufactured, marketed, sold, or distributed by defendants Johns Manville and Certain-Teed were defective and unreasonably dangerous to users of such products under Section 402A of the Restatement (Second) of Torts (1965). Defendants deny that their products were defective as manufactured and distributed, and defendants contend their products were accompanied by adequate warnings which made their use safe. Plaintiffs have moved the Court to grant a partial summary judgment on the issue of whether the cement pipes in question were defective and unreasonably dangerous. In support of their position that cement pipes containing asbestos are unreasonably dangerous as a matter of law, plaintiffs cite *Borel v. Fibreboard Paper Products Corporation*, 493 F.2d 1076 (5th Cir.), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Defendants oppose the application of collateral estoppel to the cement pipe in question, contending that *Borel* is limited to a holding that insulation products containing asbestos are unreasonably dangerous to users of such products. Further, defendants assert that it is inappropriate for the Court to invoke offensive collateral estoppel on the issue of whether cement pipe containing asbestos is unreasonably dangerous.

█ In this strict liability action, plaintiffs have the burden of proving by a preponderance of the evidence the following elements:

1. Defendants manufactured, marketed, sold, distributed, or placed in the stream of commerce products containing asbestos.

2. Products containing asbestos are unreasonably dangerous.

3. Asbestos dust is a competent producing cause of mesothelioma.

4. Decedent was exposed to defendant's products.

5. The exposure was sufficient to be a producing cause of mesothelioma.

6. Decedent contracted mesothelioma.

7. Plaintiffs suffered damages.

See Restatement (Second) of Torts § 402A(1) (1965). In moving for partial summary judgment, plaintiffs contend that *Borel* established as a matter of law that defendant Johns Manville manufactured and distributed products containing asbes-

tos and that such products are unreasonably dangerous and defective. Plaintiffs argue that collateral estoppel should be invoked so as to preclude relitigation of elements # 1, 2, and 3. Defendant Johns Manville asserts that the differences in the products involved, cement pipe containing asbestos in the present case and insulation products containing asbestos in *Borel*, make the application of collateral estoppel in this case unfair. Defendant Certain-Teed argues that due process considerations prevent application of collateral estoppel to products it has manufactured because Certain-Teed was not a party to the judgment entered in *Borel*.

■ The Court is of the opinion that federal law governs the issue of collateral estoppel application in this diversity of citizenship action. The Court is persuaded that the reasoning underlying the decision in *Aerojet-General Corporation v. Askew*, 511 F.2d 710 (5th Cir. 1975), holding that federal law controls the res judicata effect to be given a prior diversity judgment in a federal question lawsuit, is equally applicable to the issue of which law controls the issue of collateral estoppel effect in a diversity lawsuit.

*Borel* was a diversity lawsuit in which another plaintiff successfully contended that Johns Manville's insulation products containing asbestos were unreasonably dangerous and defective. The theory of plaintiff's lawsuit in *Borel* was that the products with which Clarence Borel worked were not accompanied by an adequate warning of the dangers associated with inhalation of asbestos dust so as to make the product unreasonably dangerous to users. Liability in *Borel* was predicated upon the following rationale:

> "In *Borel*, manufacturers of insulation products were held strictly liable to an insulation worker who developed asbestosis and mesothelioma and ultimately died because of their failure to warn of the dangers of inhaling asbestos dust. Our holding in that case however, was predicated on our conclusion that the dangers of inhaling asbestos dust were not suffi-

ciently obvious to insulation workers to relieve the manufacturers of the duty to warn. See 493 F.2d at 1093. The relation of asbestos dust inhalation to asbestosis and mesothelioma was well documented in medical journals during most if not all of the period of Borel's exposure, but Borel, an insulation worker since 1936, was understandably unaware of these technical medical findings." *Martinez v. Dixie Carriers*, 529 F.2d 457, 466 (5th Cir. 1976).

The Fifth Circuit affirmed the jury's finding that products containing asbestos were unreasonably dangerous because of a marketing defect; *Borel* established that asbestos products introduced into the stream of commerce since the mid 1930's were not accompanied by warnings sufficient to allow users to make an intelligent choice about exposure. *Ibid.*, p. 1089.

■ There are three threshold requirements for the application of collateral estoppel. First, the issue to be concluded must be identical to that involved in the prior action; second, the issue must have been actually litigated in the prior action; and finally, the determination made of the issues in the prior action must have been necessary and essential to the resulting judgment. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458 (5th Cir. 1971).

After being under attack by commentators and courts for many years, the mutuality of estoppel doctrine, which required both parties to have been parties to the prior judgment before estoppel could be used to foreclose subsequent litigation on an issue, was discarded by the Supreme Court in *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In abandoning mutuality of estoppel, the *Blonder-Tongue* Court held that collateral estoppel could be used defensively by a defendant in a patent infringement action where the prior judgment had declared the same patent invalid. *Id.*, p. 347, 91 S.Ct. p. 1452. Eight years after the *Blonder-Tongue* decision, the Supreme Court sanctioned the use of offensive collateral estop-

pel by a plaintiff in appropriate circumstances. *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■ Holding that a plaintiff stockholder's class could collaterally estop the defendant from relitigating the factual issue of a false, misleading proxy on the basis of a prior declaratory judgment obtained by the Securities and Exchange Commission, the Supreme Court ruled that application of offensive collateral estoppel is a discretionary matter with the trial judge. *Id.*, p. 331, 99 S.Ct. p. 651. Contrary to the position of Johns Manville, Justice Stewart relied heavily upon *Blonder-Tongue* in concluding that offensive use of collateral estoppel is not precluded; specifically, *Parklane Hosiery* adopted the *Blonder-Tongue* reasoning that "repeated litigation of the same issue. . . ." is a waste of judicial resources. *Ibid.* The distinctions that *Parklane Hosiery* did draw between defensive and offensive collateral estoppel mandate that trial court consider notions of fairness to the defendant and whether plaintiff could have joined in the earlier action where a plaintiff seeks to invoke offensive collateral estoppel, in addition to the traditional threshold requirements. *Parklane Hosiery* distinguished promotion of judicial economy in the two situations by explaining that "defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible", while in offensive collateral estoppel situations "the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Id.*, at pp. 329–30, 99 S.Ct. at pp. 650–51. Thus, if plaintiff could have easily joined the earlier lawsuit, offensive collateral estoppel should not be applied. Offensive collateral estoppel results in unfairness to the defendant if the first action was not vigorously defended, either because plaintiff sued for small damages or future lawsuits were not foreseeable, or if procedural opportunities are available in the subsequent action for the first time. *Ibid.*

■ The Court is persuaded that the traditional requirements of collateral estoppel are met in the case at bar. The factual issue of whether asbestos products were defective as marketed was litigated and concluded in *Borel*. See also, *Karjala v. Johns-Manville*, 523 F.2d 155 (8th Cir. 1975). Defendant Johns Manville argues that the issue of whether cement pipe containing asbestos was defectively marketed is not identical to the *Borel* conclusion that asbestos insulation products are unreasonably dangerous to users. The Court rejects defendant's contention that insulation products and cement pipe are entirely different; both products contain asbestos and produce asbestos dust upon use. The position of the defendants that adequacy of warning and dangerousness of asbestos dust inhalation should be relitigated for every different type of asbestos product manufactured during the last fifty years reflects "the aura of the gaming table" that was laid to rest in *Blonder-Tongue*. *Borel* established that asbestos products were distributed without proper warnings; foreseeability and knowledge at the time of manufacture are not at issue in a products liability lawsuit. See Green, *Strict Liability Under Sections 402A and 402B: A Decade of Litigation*, 54 Tex. L.Rev. 1185 (1976).

Differences in the end uses of cement pipes and insulation products, percentage of asbestos content of the products, and environmental conditions present when the products were used are all factors which relate to the issue of whether there was sufficient exposure to asbestos dust to be a producing cause of mesothelioma. Insufficient exposure is a defense which is preserved under this collateral estoppel order preventing relitigation of whether products containing asbestos are defective and whether asbestos dust can be a producing cause of mesothelioma.

Plaintiffs' wrongful death cause of action is alleged to have accrued in 1977–1978 when Alvin Flatt contracted mesothelioma and died; obviously, plaintiffs could not have joined in *Borel*. Plaintiffs did not know of their claim during the period when *Borel* was being litigated. Johns Manville was not sued for nominal damages by Clar-

ence Borel's survivors, and the procedural rules currently in effect in the federal courts are the same as the rules that governed the trial of *Borel*. The Court is convinced that the estoppel effect of the *Borel* judgment was foreseeable to Johns Manville; furthermore, the Court finds that the *Borel* opinion relates to all products which contain asbestos and is not limited to the particular products to which Clarence Borel was exposed.

Johns Manville has successfully defended several asbestos lawsuits in the recent past. *Campbell v. Johns Manville*, No. 3–78–185 (E.D.Tenn.1978); *Starnes v. Johns Manville*, No. 2075–122 (E.D.Tenn.1977); *Carpenter v. Johns Manville*, No. C–78–224 (N.D.Ohio 1979). The Court notes that Johns Manville had a judgment entered in its favor in *Mooney v. Fibreboard Corp., et. al.*, 485 F.Supp. 242 (E.D.Tex.1980), a case in which Chief Judge Fisher collaterally estopped relitigation of the issue of whether products containing asbestos are unreasonably dangerous and held that asbestos dust is a competent producing cause of mesothelioma and asbestosis. These previous judgments in favor of Johns Manville are not inconsistent with the conclusion reached in *Borel* that asbestos products were defectively marketed without an adequate warning because "inhaling asbestos dust in industrial conditions, even with relatively light exposure, can produce the disease of asbestosis." *Ibid.*, p. 1083. Rather, lawsuits in which Johns Manville has prevailed have been decided on the basis that there was insufficient exposure to asbestos dust, or alternatively, the plaintiff, or decedent, did not contract asbestosis or mesothelioma.

The Court holds that as a matter of law products containing asbestos are defective and unreasonably dangerous within the meaning of section 402A of the Restatement. As a matter of law asbestos dust is a producing cause of certain lung diseases, including asbestosis and mesothelioma. The Court grants plaintiffs' motion for partial summary judgment as relates to whether cement pipes containing asbestos as manufactured, marketed, sold, or distributed by defendant Johns Manville were defective and unreasonably dangerous; the Court

precludes defendants from relitigating this issue.

Defendant Certain-Teed was not a party to *Borel* and has never been a party to an adverse judgment in an asbestos lawsuit. *Borel* established that any products containing asbestos which were distributed since the mid 1930's are unreasonably dangerous; therefore, the Court grants partial summary judgment in favor of the plaintiffs and against defendant Certain-Teed on the issue of whether products containing asbestos are defective and unreasonably dangerous. However, due process considerations require the Court to deny plaintiffs' motion for partial summary judgment as it relates to whether defendant Certain-Teed manufactured, sold, marketed, or distributed products containing asbestos.

Defendants Johns Manville and Certain-Teed are precluded from relitigating the issue of whether their asbestos products which were manufactured by each of said defendants were defective and unreasonably dangerous, under the provisions of the Restatement (Second) of Torts (1965). The Court directs that each defendant be collaterally estopped from raising said issue in the course of this trial.

The Court finds as a matter of law that products placed in the stream of commerce containing asbestos are defective for the reason that the same are unreasonably dangerous to the users of such products. *Borel, supra*. The Court holds as a matter of law that asbestos dust is a competent producing cause of certain lung diseases, including asbestosis and mesothelioma.

The Court holds that the defendants are not entitled to and will not present evidence on the "state of the art" defense, as such evidence is immaterial on the issues remaining to be tried in this cause. Evidence relating to the state of the art at the time of manufacture is relevant only to the issue of due care in the manufacturing process, a negligence concept not at issue in this strict liability action. *Borel* conclusively determined that asbestos products are defective because of the lack of an adequate warning. Regardless of what was reasonably foreseeable to the defendants at

the time of manufacture, asbestos products should have been accompanied by adequate warnings; the nature of this strict liability action makes the defendants' state of knowledge at the time of manufacture irrelevant. The product and warnings attached thereto are in issue, not the defendants' conduct. *Gonzales v. Caterpillar Tractor*, 571 S.W.2d 867, 871 (Tex.1978).

The Court directs that the following issues will be tried to a jury in this cause: (1) whether defendant Certain-Teed introduced products containing asbestos into the stream of commerce; (2) whether Alvin Flatt was exposed to any particular defendant's product containing asbestos, and if so, whether the degree of such exposure to such defendant's product was sufficient to be a producing cause of decedent's death; (3) whether decedent contracted mesothelioma; (4) plaintiffs' damages, if any; (5) defendants' affirmative defenses, if any.

The Court is of the opinion that judicial economy will be served by the submission of any excluded evidence after the jury has retired for deliberation.