Alberta **MIGUES**, Plaintiff-Appellee,

v.

**FIBREBOARD CORP., et al., Defendants,**

**Nicolet Industries, Defendant-Appellant.**

No. 80–1994.

United States Court of Appeals, Fifth Circuit.*
Unit A

Dec. 7, 1981.

As Amended on Denial of Rehearing Jan. 6, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Dale Dowell, Beaumont, Tex., Jack E. Urquhart, Houston, Tex., for defendant-appellant.

Walter Umphrey, Stephen M. Rienstra, Port Arthur, Tex., for plaintiff-appellee.

O. J. Weber, Beaumont, Tex., amicus curiae, for Keene Corp.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

In *Borel v. Fibreboard Paper Products Corporation*, 493 F.2d 1076 (5th Cir. 1973) this Court provided an extensive analysis of Texas product liability law as it is to be applied in suits brought against manufacturers of asbestos products. Now we are called upon to determine whether *Borel* can serve as precedential authority for the proposition that all asbestos products are unreasonably dangerous *as a matter of law.* We conclude that it cannot.

## I. *BACKGROUND*

Mr. Russel Migues worked as an insulator at Texaco, Incorporated from 1944 until 1977. According to the testimony of his co-workers, Mr. Migues' job as an insulator involved cutting asbestos insulating products. The cutting process produced asbestos dust which Mr. Migues and the other insulators inhaled. In September 1977, a medical biopsy revealed that Mr. Migues was suffering from mesothelioma, a fatal form of lung cancer. According to plaintiff's expert medical witnesses, mesothelioma is caused by asbestos inhalation. Mr. Migues died soon after the 1977 diagnosis.

Mrs. Migues brought suit in the federal district court for the Eastern District of Texas[1] against fourteen asbestos manufacturers,[2] charging that the asbestos products

---

1. Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332. The action was brought under the Texas Survival Statute, Tex.Rev.Civ. Stat.Ann. art. 5525 (Vernon 1958) and Wrongful Death Act, Tex.Rev.Civ.Stat.Ann. art. 4671 (Vernon 1952).

2. The original defendants were: Fibreboard Corporation, Combustion Engineering, Inc., Johns-Manville Sales Corporation, Owens-Corning Fibreglas Corporation, Eagle-Pitcher Industries, Inc., Pittsburg Corning Corporation, Unarco Industries, Inc., Celotex Corporation,

manufactured by defendants were unreasonably dangerous and that exposure to these products caused her husband's death.

Prior to trial, Judge Parker granted plaintiff's Motion for Partial Summary Judgment on the issue of whether asbestos-containing products were unreasonably dangerous to users or consumers under Texas products liability law. According to Judge Parker, the only issues for the jury to decide were: (1) whether defendants manufactured asbestos, (2) if so, whether the decedent Russel Migues was exposed to any individual defendant's products, (3) whether such exposure, if any, was a producing cause of his death, (4) whether Mr. Migues contracted mesothelioma, and finally, (5) the amount of plaintiff's damages, if any.

Following the District Court's order, thirteen defendants settled with plaintiff prior to trial for a total amount of $400,000. The case then went to trial against the remaining defendant, Nicolet Industries, Inc. (hereinafter "Nicolet"). The jury found in favor of Mrs. Migues, and awarded her damages of three million dollars. In response to specific interrogatories by the Court, the jury found that Mr. Migues had been exposed to the thirteen settling defendants' asbestos products in addition to those of Nicolet, and that all of these products were producing causes of Mr. Migues' death.

Defendant Nicolet's Motions for Directed Verdict and for Judgment Notwithstanding the Verdict were denied. Judge Parker did, however, reduce Mrs. Migues' award, via remittituer, to $1.5 Million.[3] He then credited Nicolet with the $400,000 paid in settlement by the other defendants, and entered judgment, 493 F.Supp. 61, against Nicolet for the remainder.

Defendant Nicolet brought this appeal, alleging several reasons for reversal. Appellant first suggests that this Court must reverse the District Court's denial of Nicolet's Motions for Directed Verdict and for Judgment Notwithstanding the Verdict. Nicolet argues that even if we assume, as did the District Court, that asbestos is unreasonably dangerous as a matter of law, plaintiff did not meet her burden of proving that the products of this particular defendant, Nicolet, were a producing cause of her husband's death. Alternatively, Nicolet asks that we remand this case for a new trial, citing several alleged errors made by the District Court in the proceedings below. Foremost among these arguments is Nicolet's claim that the District Court's order granting partial summary judgment to plaintiff on the issue of the unreasonably dangerous nature of asbestos products violates Nicolet's rights to due process and to a jury trial under the Fourteenth and the Seventh Amendments. Finally, Nicolet claims that the District Court's method of determining Nicolet's share of the final judgment awarded to plaintiff was erroneous. Instead of crediting Nicolet with the amount paid in settlement by the other thirteen defendants, Nicolet argues, the District Court should have held Nicolet liable for only its proportional share—one fourteenth—of the $1.5 Million judgment.

## II. DEFENDANT'S MOTIONS FOR DIRECTED VERDICT AND FOR JNOV

Appellant's first contention—that the District Court erred in refusing to grant Nicolet's Motions for Directed Verdict and for JNOV—is without merit. Nicolet argues that there was no substantial evidence that the decedent Mr. Migues was exposed to Nicolet products containing asbestos, and no evidence at all that Mr. Migues' exposure, if any, to Nicolet products was a producing cause of the disease which led to his death. However, examining the evidence in the light most favorable to plaintiff, *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), we find that the District Court was indeed justified in submit-

---

Ruberoid Corporation, Armstrong Cork Company, Standard Asbestos Manufacturing and Insulating Company, Keene Corporation, Crown Cork and Seal Company, Inc., and Nicolet Industries, Inc., appellant herein.

**3.** Plaintiff consented to the reduction.

ting the issues of exposure and causation to the jury.

Nicolet's answers to interrogatories—admitted into evidence at trial—support the conclusion that Nicolet is a manufacturer of asbestos-containing insulation products. Three of his former co-workers testified that the decedent had worked with defendant's asbestos products while employed as an insulator at Texaco, and that the job of cutting insulation pieces to fit pipes produced dust which the insulators, including the decedent, inhaled. Defendant introduced no evidence contradicting the testimony of plaintiff's witnesses. Under these circumstances, we can certainly say that "reasonable and fairminded men in the exercise of impartial judgment," *Boeing Co. v. Shipman, supra*, could reach the conclusion that Mr. Migues was exposed to asbestos products manufactured by Nicolet.

Moreover, with regard to causation, plaintiff's expert medical witnesses testified that Mr. Migues had died of mesothelioma, that the only known cause of mesothelioma is inhalation of asbestos fibers, and that even a very limited amount of asbestos fiber can produce the disease within a short time.[4] Again, Nicolet offered no evidence to contradict the testimony of plaintiff's experts.

In sum, plaintiff introduced uncontraverted evidence that Mr. Migues died of mesothelioma, that asbestos fibers were present in his lungs at the time of death, that asbestos inhalation is the only known cause of mesothelioma, that Nicolet produced insulation products containing asbestos, and that Mr. Migues worked with Nicolet asbestos products during the course of his employment as an insulator. We find that there was more than sufficient circumstantial evidence to support the jury's conclusion that Nicolet's products were a producing cause of Mr. Migues' death. *Borel v. Fibreboard*, 493 F.2d at 1094. Accordingly,

the District Court did not err when it denied defendant's Motions for Directed Verdict and for JNOV.

### III. COLLATERAL ESTOPPEL

A great deal of sound and fury has been generated over the question of whether Nicolet could be precluded from litigating the unreasonably dangerous nature of its asbestos-containing products based on the collateral estoppel effect of a case—*Borel v. Fibreboard, supra*—to which Nicolet was not a party.[5] We decline to reach this question for the simple reason that it is not presented in the case before us. The District Court's order granting plaintiff's Motion for Partial Summary Judgment, makes it clear that appellant herein—Nicolet—was precluded from litigating the dangerousness of asbestos products on the basis of what the District Court thought to be the *stare decisis* effect of *Borel's* holdings of law and *not* on the grounds that Nicolet was collaterally estopped by any issue of fact decided in *Borel*.

In his pre-trial order precluding all fourteen original defendants from litigating the unreasonably dangerous character of asbestos, Judge Parker clearly distinguished between two groups of defendants: one group was precluded on the basis of collateral estoppel; and the other group, which included appellant Nicolet, was precluded on the basis of *Borel's stare decisis* effect. The order lists eleven defendants who had been parties to one or both of two prior asbestos cases: *Borel, supra*, and *Condray v. Fibreboard*, B–76–108–CA (E.D.Tex.1977). In both cases, it was determined that the asbestos products manufactured by these eleven defendants were unreasonably dangerous to users or consumers under Texas products liability law. Therefore, concluded Judge Parker, these eleven defendants were collaterally estopped from relitigating

---

4. Mesothelioma is distinguishable from other asbestos-related diseases, which can be brought on by a variety of environmental factors other than exposure to asbestos fibers, and which develop only after inhalation of asbestos fibers over a prolonged period of time.

5. In addition to the voluminous discussion of this issue by Nicolet, Keene Corporation has submitted an amicus brief featuring a thorough discussion of the collateral estoppel issue.

both the issue of whether they manufactured asbestos products, and the issue of whether these products were unreasonably dangerous.[6]

Appellant Nicolet, however, was not included in the list of eleven defendants who were collaterally estopped, because Nicolet, along with two other defendants, had not been parties to either *Borel, supra,* or *Condray, supra.* As to these three defendants, Judge Parker cited *Borel* and held "as a matter of law," that products containing asbestos were defective and unreasonably dangerous to consumers or users of the product, and that asbestos was a producing cause of such lung diseases as asbestosis and mesothelioma.[7] However, unlike the eleven defendants who were collaterally estopped by prior cases, Nicolet and the other two defendants had never been found in any prior proceeding to have manufactured and sold asbestos products. Therefore, in order to prevail against these three defendants, Judge Parker ordered that plaintiffs would be required to introduce evidence that the defendants manufactured and sold asbestos products. Thus, it is apparent that Judge Parker distinguished between preclusion on the grounds of collateral estoppel, which included preclusion as to matters of "fact" found in prior cases; and preclusion on the grounds of what the District Court thought to be the *stare decisis* effect of *Borel,* which did not extend to issues of "fact." And it is the latter theory—*stare decisis*—which formed the basis for Judge Parker's pretrial order as to appellant Nicolet.

This is not the first occasion on which Judge Parker has issued such a pretrial order. In *Flatt v. Johns-Manville Sales Corp.,* 488 F.Supp. 836 (E.D.Tex.1980), a wrongful death action against two asbestos manufacturers, Judge Parker issued a pretrial order virtually identical to the pretrial order in this case. In *Flatt, supra,* Judge Parker found that one of the defendants— Johns-Manville Sales Corp.—was collaterally estopped by the judgment in *Borel* from relitigating the issue of whether asbestos was unreasonably dangerous. Judge Parker noted that in *Borel,* Johns-Manville had had a full and fair opportunity to litigate the dangerousness issue; that the collateral estoppel effect of *Borel* had been foreseeable to Johns-Manville; and that other judgments in favor of Johns-Manville were not inconsistent with *Borel*'s conclusions regarding the unreasonably dangerous nature of asbestos. 488 F.Supp. at 840–841. However, with respect to the other defendant, Certain-Teed Corporation, who had *not* been a party to *Borel,* Judge Parker specifically declined to find that *Borel* had a collateral estoppel effect. Instead, he construed *Borel* to stand for the proposition that any asbestos products distributed since the mid-1930's were unreasonably dangerous as a matter of law, and that principles of *stare decisis* precluded Certain-Teed from litigating that issue in *Flatt.* 488 F.Supp. 836, 841. However, "due process considerations" required that the *Flatt* plaintiffs prove Certain-Teed was indeed a manufacturer or seller of asbestos products, since this fact had never been established in

---

**6.** Judge Parker's order reads:

"Therefore, it is ORDERED, ADJUDGED and DECREED that the above listed defendants [parties to either *Borel* or *Condray*] are hereby precluded from relitigating the issue of whether or not their products which were manufactured, sold or distributed by each of said defendants were defective and unreasonably dangerous, under the provisions of Section 402A of the Restatement (Second) of Torts (1965). It is further ORDERED, ADJUDGED and DECREED that each and every listed defendant is *collaterally estopped* from raising said issue in the course of this trial." (Emphasis added.)

**7.** Judge Parker stated:

"The Court further finds and holds *as a matter of law* that products in the stream of commerce containing asbestos are defective for the reason that the same are unreasonably dangerous to the consumer or user of the product. *Borel, supra.*

The Court further finds and holds *as a matter of law* that asbestos is a competent producing cause of certain lung diseases, including asbestosis and mesothelioma." (Emphasis added.)

any prior case to which Certain-Teed was a party.[8]

It is true that in a recent case, *Hardy v. Johns-Manville Sales Corp.*, 509 F.Supp. 1353 (E.D.Tex.1981), Judge Parker appears to have taken a new approach toward collaterally estopping asbestos manufacturers who were not parties to *Borel, supra,* and thereby precluding them from litigating the unreasonably dangerous nature of their products.[9] However, *Hardy, supra,* and the collateral theories set forth therein, are not before us on appeal today.[10] The sole issue presented by the case which *is* before us concerns the *stare decisis* effect of *Borel.* Accordingly, we express no opinion as to whether *Borel* may be used to collaterally estop either asbestos manufacturers who were parties to that case, or those who were not, in future cases arising out of asbestos-related diseases. Latent within this litigation, we realize, is the need to redefine the doctrine of collateral estoppel spawned by *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). This task, however, we must bequeath to our brethren in future cases which squarely present the issue of collateral estoppel.

## IV. THE STARE DECISIS EFFECT OF BOREL

In its order granting plaintiff's Motion for Partial Summary Judgment, the District Court construed the *Borel* case as establishing "as a matter of law" that asbestos products cause lung cancers, and that such products are unreasonably dangerous to consumers or users under Texas standards of strict products liability. This "holding of law" was found to control all product liability actions involving asbestos through the operation of *stare decisis* principles. Accordingly, the District Court held that insofar as the unreasonably dangerous nature of asbestos had already been established as a matter of law, that issue need not be tried to the jury in this case. We find, however, that the District Court's interpretation of *Borel* is erroneous. The District Court may have thought that *Borel* stands for the proposition that all asbestos products are unreasonably dangerous as a matter of law, but upon reviewing *Borel,* we must conclude that there is no such *decisis* in *Borel* to *stare.*

In *Borel,* this Court examined both the District Court's instructions to the jury on Texas products liability law, and its denial of defendants' Motions for Directed Verdict

---

**8.** "Defendant Certain-Teed was not a party to *Borel* and has never been a party to an adverse judgment in an asbestos lawsuit. *Borel* established that any products containing asbestos which were distributed since the mid 1930's are unreasonably dangerous; therefore, the Court grants partial summary judgment in favor of the plaintiffs and against defendant Certain-Teed on the issue of whether products containing asbestos are defective and unreasonably dangerous. However, due process considerations require the Court to deny plaintiffs' Motion for Partial Summary Judgment as it relates to whether defendant Certain-Teed manufactured, sold, marketed, or distributed products containing asbestos." 488 F.Supp. at 841.

**9.** In the *Hardy v. Johns-Manville Sales Corp.,* 509 F.Supp. 1353 (E.D.Tex.1981), sixteen asbestos manufacturers named as defendants in products liability actions pending before the Eastern District of Texas joined in a Motion for Reconsideration of *Flatt v. Johns-Manville Sales Corp., supra.* In denying the Motion for Reconsideration, Judge Parker reiterated his

theory that *Borel* established as a matter of law that asbestos products were unreasonably dangerous. 509 F.Supp. at 1360. Judge Parker went on to state that *Borel* could also be used to collaterally estop non-*Borel* asbestos manufacturers because non-*Borel* defendants shared an "identity of interests" with *Borel* defendants sufficient to establish privity between them. 509 F.Supp. at 1361. This identity of interests was based in part on a theory of "enterprise" or "industry liability" pertaining to asbestos manufacturers as a whole. 509 F.Supp. at 1357–1359, 1361. Alternatively, the Judge found that he could take judicial notice, under the Federal Rules of Evidence, Rule 201, of the "adjudicative fact" that asbestos causes disease, thereby precluding further litigation of that issue. 509 F.Supp. at 1362-1363.

**10.** Judge Parker certified his holding in *Hardy, supra,* for interlocutory appeal. 509 F.Supp. 1363. An appeal has been docketed in this Court under the caption *C.A. Hardy v. Johns-Manville Sales Corp.,* No. 81-2204 and briefing was complete as of November 1, 1981.

and for JNOV. In reviewing the jury instructions, we set out the elements of a cause of action in strict products liability under Texas law.[11] *Borel's* explanation of products liability law under the Restatement (Second) of Torts has been affirmed by this Court upon numerous occasions, *see Burks v. Firestone Tire & Rubber Co.*, 633 F.2d 1152, 1155 (5th Cir. 1981); *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 977 (5th Cir. 1978); *Mitchell v. Fruehauf Corp.*, 568 F.2d 1139, 1145 (5th Cir. 1978); *Hagans v. Oliver Machinery Co.*, 576 F.2d 97, 99, 101 (5th Cir. 1978); *Martinez v. Dixie Carriers*, 529 F.2d 457, 465 (5th Cir. 1976); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1274 (5th Cir. 1974), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); and has been adopted by the Texas courts, *see Turner v. General Motors Corporation*, 584 S.W.2d 844, 851 (Tex.1979); *Lopez v. Aro Corp.*, 584 S.W.2d 333, 336 (Tex.Civ.App.1979); *Winthrop Lab. Div. of Sterling Drugs, Inc. v. Crocker*, 502 S.W.2d 850, 858 (Tex.Civ.App.1973). Nothing in today's opinion should be construed as impuning the integrity of those holdings of law which are stated in *Borel*. However, no amount of maneuvering or interpretation will allow us to add to these holding, and to affirm the District Court's conclusion that *Borel* holds, "as a matter of law," that all asbestos products are unreasonably dangerous.

In addition to its discussion of products liability law, the *Borel* Court also examined the lower court's denial of defendants' Motions for Directed Verdict and for JNOV.

In doing so, this Court applied products liability law to the specific facts of the *Borel* case. The central question was whether there was substantial evidence to support a jury finding in favor of plaintiff. *Boeing v. Shipman, supra.* We concluded that the evidence was indeed sufficient to support a finding of liability. The *only* determination made by this court in *Borel* was that, based upon the evidence in that case, the jury's findings could not be said to be incorrect as a matter of law. But this Court certainly did not decide that every jury presented with the same facts would be compelled to reach the conclusion reached by the *Borel* jury: that asbestos was unreasonably dangerous. Such a holding would have been not only unnecessary, it would also have been unwarranted.

In *Borel*, this Court said: "the jury was *entitled to* find that the danger to Borel and other insulation workers from inhaling asbestos dust was foreseeable to the defendants at the time the products causing Borel's injuries were sold," 493 F.2d at 1093 (emphasis added). We did not say that the jury was compelled, as a matter of law to reach this result, or that it could not have reached another result. On the issue of plaintiff Borel's possible voluntary assumption of risk, this Court stated "we cannot say that, as a matter of law, the danger [of asbestos inhalation] was sufficiently obvious to asbestos installation workers to relieve the defendants of the duty to warn." *Id.* This Court did not say that, as a matter of law, the danger of asbestos inhalation

---

11. *Borel* holds that, under the Restatement (Second) of Torts (1964), section 402A, which has been adopted in Texas, "one who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer." 493 F.2d at 1076. According to the Restatement, Section 402A, comment j, a seller has a duty to warn consumers or users of his product of known or knowable dangers attendant upon its use. 493 F.2d at 1088. A product may be "unavoidably unsafe," according to the Restatement, Section 402A, comment k, when it is incapable of being made safe for its "ordinary and intended use." *Id.* Such a product may nevertheless be marketed if it provides impor-

tant benefits, but the seller of such a product is responsible for informing consumers or users of the risk of harm. 493 F.2d at 1088–89. Moreover, manufacturers are "held to the knowledge and skill of an expert" in products liability cases. *Id.* Manufacturers must therefore at least keep themselves informed of scientific discoveries concerning their products. 493 F.2d at 1090. Finally, a manufacturer's duty to warn extends to the ultimate user of his product, and his warnings must be given in such a way as to reach that user. The presence of an intermediary party who might also be responsible for warning the user—in *Borel*, the insulation contractors—does not relieve the manufacturer of his duty to warn. 493 F.2d at 1091.

was so hidden from every asbestos worker in every situation as to create a duty to warn on the part of all asbestos manufacturers. On rehearing, this Court held that although some asbestos products used by plaintiff Borel contained warnings, there was sufficient evidence that the warnings were inadequate to inform workers of the actual dangers posed by asbestos inhalation to justify submission of that issue to the jury. 493 F.2d at 1105. This Court did not state that every jury would be required, as a matter of law, to find such warnings inadequate.

In sum, this Court held in *Borel* only that the *Borel* jury, on the evidence presented to it, could have found that asbestos products unaccompanied by adequate warnings were unreasonably dangerous. The proposition that all juries presented with similar evidence regarding asbestos products would be compelled to find those products unreasonably dangerous was not presented in *Borel*, and therefore, this Court did not reach it. Since *stare decisis* is accorded only those issues necessarily decided by a court in reaching its result, the District Court erred in overreading the holding of our opinion in *Borel*.

## V. *CONCLUSION*

This is not the first, nor will it be the last, asbestos case confronting this Court. At recent count, there were over three thousand asbestos plaintiffs in the Eastern District of Texas alone. *Hardy v. Johns-Manville Sales Corp.*, 509 F.Supp. 1353, 1354 (E.D.Tex.1981). It is understandable that the district courts will seek ways of eliminating the need to continuously reinvent the asbestos liability wheel in every one of these cases. Considerations of judicial economy demand a more streamlined mechanism for compensating asbestos victims and apportioning liability among those responsible for causing injury. Nevertheless, we hold today that this result cannot be accomplished by reading *Borel v. Fibreboard Paper Products Corp.* to stand for the proposition that in all cases, asbestos products are unreasonably dangerous as a matter of law.

There may be alternative methods for adjudicating the thousands of asbestos cases facing the courts in a manner that conserves the resources of both the courts and the parties. Nothing in our opinion today should be read as foreclosing these alternatives. Some judicial constructions, such as the enterprise liability theory of collateral estoppel set forth by Judge Parker in *Hardy v. Johns-Manville Sales Corp., supra*, may appear at first glance to be novel, startling, or even revolutionary. We express no opinion as to the wisdom or propriety of such theories, as they did not form the basis for the District Court's decision in the instant case. However, we do note that the juggernaut of modern technology has repeatedly given rise to new concepts in our torts jurisprudence and procedure. Changes have come about both through expansion of the common-law and through legislative enactments. Illustrative of this development are the doctrines of strict products liability, comparative negligence, workmen's compensation, no-fault insurance, consumer protection, and the class action device—doctrines which, at the time they were first introduced, also seemed novel, startling and revolutionary. Old citadels of jurisprudence have demolished, modified and redefined to meet the needs of a rapidly changing industrial society; one which confers on its members both benefits and burdens previously unimaginable.

Whether through judge-made common-law or legislative enactment, there is an urgent need for new approaches to the national tragedy of asbestos-related disease. But, we must reiterate, the approach taken by the District Court in this case: reliance on the *stare decisis* effect of *Borel* to prevent defendant Nicolet from litigating the unreasonably dangerous nature of asbestos products, cannot be sustained. We therefore reverse the District Court's order granting plaintiff's Motion for Partial Summary Judgment on the issue of the unreasonably dangerous nature of asbestos products under Texas law, and remand this case

in its entirety for further proceedings in accordance with this decision.[12]

REVERSED IN PART AND REMANDED.

*ADDENDUM*

██ In connection with this appeal, defendant Nicolet has submitted a Supplementary Motion for Additional Relief based upon plaintiff's attorney's failure to serve its Response Brief upon Nicolet in a timely manner as provided by Fed.R.App.P., Rule 25(d). An affidavit submitted by the hapless individual responsible for this snafu, a law clerk in the office of plaintiff's attorneys, persuades us that the failure to effect service was purely inadvertent, and in no way part of a nefarious scheme aimed at discrediting Nicolet in the eyes of the Court, as suggested by appellant's inordinately elaborate Memorandum in Support of its Motion for Supplementary Relief. While we do not condone plaintiff's attorney's errant departure from the straight and narrow path of appellate procedure, neither do we consider this departure an appropriate subject for the exercise of this Court's disciplinary powers under Fed.R.App.P., Rule 46(c). In short, Nicolet's Supplementary Motion for Additional Relief reflects nothing more than an attempt to construct a mountain out of a molehill, and is accordingly DENIED.

---

12. We do not reach today the issue raised by defendant Nicolet of how to apportion a judgment in plaintiff's favor between Nicolet and the thirteen co-defendants who settled with plaintiff. Because we remand, we decline to speculate about an issue of Texas state law which may or may not be raised again. If the issue of contribution among joint tortfeasors is squarely presented on retrial and reappeal, we will address it at that time.