**Daylene L. MILLER, Administratrix of Estate of Jerry D. Miller, Deceased; et al., Plaintiffs,**

v.

**JOHNS–MANVILLE SALES CORPORATION, Defendant.**

**Civ. A. No. 81–1003.**

United States District Court, D. Kansas.

April 14, 1982.

this measure would not constitute a substantial defect in the administrative process.

Kenneth F. Crockett, Tilton, Dillon, Beck & Crockett, Topeka, Kan., and Warner Moore, Warnick & Moore, Wichita, Kan., for plaintiffs.

Lyman Field, Field, Gentry, Benjamin & Robertson, Kansas City, Mo., William H. Seiler, Jr., Robert W. Wise, McPherson, Kan., for defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THEIS, District Judge.

This matter is before the Court on plaintiffs' motion for partial summary judgment on the issue whether the asbestos insulation manufactured by defendant is inherently dangerous. Plaintiffs hope to have Johns-Manville collaterally estopped from disputing that issue on the basis of a judgment rendered in the Eastern District of Texas, and affirmed in *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

■ The threshold question is whether collateral estoppel can be available to plaintiffs at all. Plaintiffs argue federal law can be applied, relying upon a series of cases from the Eastern District of Texas. This Court respectfully disagrees with these cases and must reject their application in this case. See *Faussett v. Taylor*, No. 80–1421 (D.Kan. October 1, 1981) (order granting summary judgment on basis of Kansas nonclaim statute). The inquiry must be whether Kansas law will allow a plaintiff to use collateral estoppel when the plaintiff was not a party, nor in privity with a party in the prior action. The settled Kansas law has been that mutuality is a prerequisite for application of collateral estoppel and res judicata. See, e.g., *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972); *Adamson v. Hill*, 202 Kan. 482, 449 P.2d 536 (1971). However, Judge O'Connor allowed a defendant to use collateral estoppel defensively in a non-mutual situation in *Crutsinger v. Hess*, 408 F.Supp. 548 (D.Kan.1976). Examining the criteria a federal district judge must consider in predicting state law, Judge O'Connor considered, inter alia, the decisions of other states and federal courts concerning the abandonment of the mutuality requirement. Since 1976, the distinction between so-called offensive and defensive use of collateral estoppel has been considerably eroded, particularly by the United States Supreme Court in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 522 (1979). The characterization of collateral estoppel as a sword in the hands of a plaintiff, while merely a shield in the hands of a defendant, is an artificial one. It can cut the heart from a plaintiff's case as surely as it can gore a defendant. There is no more reason to allow a defendant to automatically reassert a discredited defense than there is to allow a plaintiff to shop for a better defendant on which to exercise his failed theory of liability. The Court is unable to predict that the Kansas Supreme Court would go as far as *Crutsinger*, yet not go on to embrace *Parklane Hosiery* and § 88 of the Restatement, Second of Judgments § 88 (Tent. Draft # 2, 1975).

■ The decision whether to apply collateral estoppel should be based upon an examination of the particular facts of the

case. This is a products liability/wrongful death action against the manufacturer of asbestos insulation to which plaintiffs' late husband and father was exposed on his job for twenty-five years. Plaintiffs seek to establish that the insulation was defective and unreasonably dangerous, as a matter of law. Cases in the Eastern District of Texas have held that on the basis of *Borel*, supra, defendant should be estopped to dispute that its asbestos insulation is unreasonably dangerous and defective.

Defendant offers several cases in which it or its privies were parties and prevailed, presenting them as inconsistent results which should prevent collateral estoppel here. Interestingly, in at least one of the cases where collateral estoppel was applied, defendant successfully defended. According to Judge Parker, of the Eastern District of Texas, the cases cited by defendant in *Flatt v. Johns-Manville Sales Corp.*, 488 F.Supp. 836 (E.D.Tex.1980), are not inconsistent with *Borel*, but were decided on the basis there was insufficient exposure to the dust, or that plaintiff or decedent did not contact asbestosis or mesothelioma.

In *Migues v. Fibreboard Corp.*, 662 F.2d 1182 (5th Cir. 1981), appellant was the only asbestos manufacturer which did not settle after the district court held all defendants would be prevented from contesting the defective nature of the insulation, either on the basis of collateral estoppel or of *stare decisis*, the applicable doctrine determined by whether the defendant in question had been a party to *Borel*. Appellant had not been a party, so the only issue on appeal was whether *Borel* established that asbestos insulation was defective as a matter of *stare decisis*, and whether the trial court was correct in requiring plaintiff to prove only that defendant manufactured and sold asbestos products in order to prevail.

The Court described its holding in *Borel* as follows:

"In addition to its discussion of products liability law the *Borel* Court also examined the lower court's denial of defendants' Motions for Directed Verdict and for JNOV. In doing so, this Court applied products liability law to the specific facts of the *Borel* case. The central question was whether there was substantial evidence to support a jury finding in favor of plaintiff. We concluded that the evidence was indeed sufficient to support a finding of liability. The *only* determination made by this court in *Borel* was that, based upon the evidence in that case, the jury's findings could not be said to be incorrect as a matter of law. But this Court certainly did not decide that every jury presented with the same facts would be compelled to reach the conclusion reached by the *Borel* jury: that asbestos was unreasonably dangerous. Such a holding would have been not only unnecessary, it would also have been unwarranted.

"In *Borel*, this Court said: 'the jury was *entitled to* find that the danger to Borel and other insulation workers from inhaling asbestos dust was foreseeable to the defendants at the time the products causing Borel's injuries were sold,' [emphasis added by court in *Migues.*] We did not say that the jury was compelled, as a matter of law to reach this result, or that it could not have reached another result. On the issue of plaintiff Borel's possible voluntary assumption of risk, this Court stated, 'we cannot say that, as a matter of law, the danger [of asbestos inhalation] was sufficiently obvious to asbestos installation workers to relieve the defendants of the duty to warn.' This Court did not say that, as a matter of law, the danger of asbestos inhalation was so hidden from every asbestos worker in every situation as to create a duty to warn on the part of all asbestos manufacturers. On rehearing, this Court held that although some asbestos products used by plaintiff Borel contained warnings, there was sufficient evidence that the warnings were inadequate to inform workers of the actual dangers posed by asbestos inhalation to justify submission of that issue to the jury. This Court did not state that every jury would be required, as a matter of law, to find such warnings inadequate.

"In sum, this Court held in *Borel* only that the *Borel* jury, on the evidence

presented to it, could have found that asbestos products unaccompanied by adequate warnings were unreasonably dangerous. The proposition that all juries presented with similar evidence regarding asbestos products would be compelled to find those products unreasonably dangerous was not presented in *Borel*, and therefore, this Court did not reach it. Since *stare decisis* is accorded only those issues necessarily decided by a court in reaching its result, the District Court erred in overreading the holding of our opinion in *Borel*." [Emphasis in original. Citations omitted.] 622 F.2d at 1188–89.

■ While the Court correctly noted the estoppel question was not presented in *Migues*, and that the considerations were not identical, the material quoted above indicates that the Fifth Circuit reads *Borel* much more narrowly than does the Eastern District of Texas. The jury in *Borel* did in fact make the findings reached against Johns-Manville and so the case for estoppel is stronger than for *stare decisis*. Coupled with a reading of the instructions under which the jury was operating in *Borel*, Appendix 2 of Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, they do increase doubt about the wisdom of applying the particular judgment reached in *Borel* to this or any other subsequent action. The instructions given in *Borel* were couched mainly in terms of warranty rather than strict liability. The appellate panel concluded they adequately presented the theory of strict liability under Texas law. Before estoppel could be applied it would be necessary in this case, governed as it is by Kansas law, to determine whether the instructions would have been approved by the Kansas Supreme Court. This will not be necessary, however, because it is the Court's conclusion there is no point in attempting to resolve this issue on collateral estoppel grounds because of other differences between Texas and Kansas law, and the effect these differences will have upon the trial of this case.

■ *Borel* was submitted to the jury on two theories, negligence and strict liability

(or breach of warranty?). The jury found against plaintiff on the basis of contributory negligence. In Kansas, despite continued reference to § 402A, and invocation of the doctrine of strict liability, strict product liability is dead. Whether you compare negligence or fault, the distinction is in reality abolished. Under strict liability certain conduct of persons using, or exposed to, a product, could behave in foreseeable yet "negligent" ways, and not have their recovery reduced. The theory was that manufacturers and suppliers were supposed to protect those people from their own ignorance and their own folly, because the manufacturers and suppliers had superior knowledge and were better able to act to protect the people who would come in contact with the products; and because it was determined as a matter of social policy the costs were more appropriately allocated to society at large and to the manufacturers and suppliers, rather than to the lone unfortunate individual who had been injured. Comparative fault, as applied in Kansas, no longer allocates the risks in that manner. See, e.g., *Lester v. Magic Chef, Inc.*, 230 Kan. 643, 641 P.2d 353 (1982). As a result of the reallocation of risks, the presentation of a product liability suit in Kansas will not be simplified by a mere statement that the product is defective and inherently dangerous as a matter of law. It will still be necessary for plaintiffs to present the same evidence in order to educate the jury, so it can attempt to intelligently apportion fault between plaintiffs and defendant. Any attempt to abbreviate the case, and skimp on presentation of evidence would in fact be a disservice to plaintiff.

The Court, of course, can direct a verdict on any issue on which the evidence points only in one direction, but it is the judgment of the Court that collateral estoppel should not be applied to determine the defective and dangerous condition of the insulation in this case. It does not appear that it will in any way simplify the issues or the presentation of the case, and might even introduce needless error.

As to the other questions raised by plaintiffs' motion, the fact that the insulation

plaintiff was in contact with came from defendant is undisputed, and should be established by stipulation between the parties or in the pretrial order. The medical evidence seems to establish a correlation between asbestos and mesothelioma, but like the matter of defect there is little point in making a determination to that effect, all the evidence will have to be presented to the jury in any event. One thing which is not clear from the arguments about mesothelioma in the briefs is whether it makes any difference when that particular disease was recognized to be connected with asbestos, or whether the duty to warn and the judgment of how adequate a warning would be does not grow out of the recognition of a connection between respiratory problems generally and asbestos. It is not at all clear from the one paragraph allusion to the "state of the art" defense what plaintiffs are referring to, whether it is an issue, or why it should be precluded. It can always become the subject of a later motion if necessary.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment is hereby overruled and denied.