John A. KARJALA, Appellee,

v.

JOHNS–MANVILLE PRODUCTS CORPORATION, Appellant.

No. 74–1797.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1975.

Decided Sept. 24, 1975.

John J. Killen, Jr., Duluth, Minn., for appellant.

Paul J. Louisell, Duluth, Minn., for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Appellant Johns-Manville Products Corporation appeals from an adverse judgment in a jury trial in which John A. Karjala, the plaintiff below, was awarded $200,000 for damages sustained as a result of contracting asbestosis from the use of appellant's asbestos products. We affirm the judgment upon the narrow grounds discussed below.

John A. Karjala began working as an installer of asbestos insulation in 1948. Between then and June, 1966, when he quit his job, Karjala was exposed to great quantities of asbestos dust. In 1959, Karjala began to feel a shortness of breath, congestion, a loss of appetite, and general weakness. Suspecting that he might have tuberculosis, he had his chest x-rayed. The x-ray showed no evidence of tuberculosis; Karjala did not see a doctor at that time, but did remain absent from his job for one week. On a later visit to the sanatorium where the x-ray was taken, he noticed that his record showed "possible asbestosis". His shortness of breath grew worse throughout this period.

In early 1963, Karjala entered a hospital for disc surgery. In the course of his treatment, a tumor was discovered on his right lung. This tumor was removed in May, 1963. The shortness of breath nevertheless continued, and even such routine activities as walking up and down stairs became strenuous for Karjala.

After coughing up blood in June, 1966, Karjala visited his doctor. Following an examination of his body and of x-ray photographs taken of his lungs, Karjala was told that he had asbestosis and that he should quit his job. He did so, but his health steadily declined.

Karjala filed this action in 1971 against several manufacturers of asbestos insulation, charging that their products were unreasonably dangerous and that they failed to warn him of the prod-

ucts' defective condition.[1] All defendants except Johns-Manville were subsequently dismissed by stipulation.

At trial, in addition to its affirmative defense that Karjala's action was barred by the statute of limitations, Johns-Manville contended principally that since it could not in the exercise of reasonable care have foreseen the dangers to insulation installers now known to be associated with its product, it could not be held responsible for the injury to Karjala's health. In support of its contention, Johns-Manville introduced into evidence two scholarly reports, written nineteen years apart. In the first, Fleischer, Viles, Gade and Drinker, *A Health Survey of Pipe-Covering Operations In Constructing Naval Vessels*, 28 J.Ind.Hyg. & Tox. 9 (1946), the authors concluded that inferences drawn from other asbestos industries (*i. e.*, that people who work with asbestos are presented with a health hazard) could not be applied to the asbestos pipe covering industry on board naval vessels and that covering pipes with asbestos insulation was not a dangerous occupation. Selikoff, Churg and Hammond, the authors of the second study, *The Occurrence of Asbestosis Among Insulation Workers in the United States*, 132 Annals N.Y.Acad.Sci. 139, 152 (1965), concluded that "asbestosis and its complications are significant hazards among insulation workers in the United States at this time." Johns-Manville contended that it could not be charged with notice of the hazard until after the publication of the second report.

Evidence was also adduced which showed that Johns-Manville knew by at least the 1930's that persons who worked at plants where asbestos products were manufactured were exposed to a substantial health hazard. Also introduced

into evidence was testimony concerning several other pre-1950 articles in which some suggestion was made of a connection between asbestosis and those who work with asbestos fibers. The case was submitted to the jury on the theory of strict liability.

## I.

We note at the outset that Johns-Manville's motion for a directed verdict was limited to its statute of limitations defense and that it failed to move for judgment notwithstanding the verdict. *See* Fed.R.Civ.P. 50(b). Under such circumstances, our review is strictly limited. *Johnson v. New York, N.H. & H. R.R.*, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952); *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947); *Tri-State Insurance Co. v. United States*, 340 F.2d 542, 546 (8th Cir. 1965). *See generally* 5A J. Moore, Federal Practice ¶ 50.12 (2d ed. 1974). We cannot test the sufficiency of the evidence to support the jury's verdict beyond application of the "plain error" doctrine in order to prevent a manifest miscarriage of justice. *United States v. Harrell*, 133 F.2d 504, 506–07 (8th Cir. 1943). *See also Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973); *Centraal Stikstof Verkoopkanter, N.V., v. Walsh Stevedoring Co.*, 380 F.2d 523, 528 (5th Cir. 1967); *Cowger v. Arnold*, 460 F.2d 219, 222 (3d Cir. 1972), *quoting Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814 (2d Cir. 1970). We hold that there was evidence upon which a jury, properly instructed, could have returned a verdict in favor of the plaintiff.[2]

Our inquiry does not stop here, however, because appellant contends that the District Court[3] in its charge to

---

1. Karjala initially based his claim upon three theories: (1) negligence, (2) strict liability, and (3) breach of warranty. Only the strict liability claim was submitted to the jury.

2. Had there been no evidence at all to support the jury's verdict, the maximum relief under such circumstances would be a new trial. *See*

*Tri-State Insurance Co. v. United States*, 340 F.2d 542, 546 (8th Cir. 1965); *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816–17 (2d Cir. 1970).

3. The Honorable Miles W. Lord, United States District Judge, District of Minnesota.

the jury (1) held appellant to an erroneous standard or duty and (2) misstated the law on the applicable statute of limitations.[4]

## II.

Appellant contends that the instruction given by the District Court on strict liability misstates the law by requiring a manufacturer to advance the state of medical knowledge and to warn of unforeseeable risks.

Judge Lord instructed the jury that:

A manufacturer has a duty to test and inspect his products, and the extent of such research and experiment must be commensurate with the dangers involved. A product must not be made available to the public without disclosure of those dangers that the application of reasonable foresight would reveal. A manufacturer is held to the knowledge and skill of an expert in determining whether or not his product is defective or otherwise dangerous. It is admitted that Johns-Manville knew as early as 1942 that asbestos would cause asbestosis when inhaled by factory workers. Mr. Karjala, however, is not a factory worker. He is an insulation installer. It is for you to decide whether or not Johns-Manville knew in fact of the danger to Mr. Karjala of contracting asbestosis. And that just goes to the question of the warning, whether or not they should have warned him, if you conclude that that might be an additional laxity on their part as to impose liability.

In reaching your decision you may consider the knowledge which Johns-Manville had relative to factory workers and whether or not this knowledge would put Johns-Manville on notice of the danger to Mr. Karjala as an installation worker.

Well, of course, the damages must have been directly caused by the use of the product. I mentioned that a little bit earlier. A direct cause is a cause which had a substantial part in bringing about the harm.

Now, the defendant claims that they didn't know that installation workers could be harmed by this material in 1964, when Dr. Selikoff put out his report. .

██ Under Minnesota law, a manufacturer has a duty to warn users of its products of all dangers associated with those products of which it has actual or constructive knowledge. Failure to provide such warnings will render the product unreasonably dangerous and will subject the manufacturer to liability for damages under strict liability in tort. *Magnuson v. Rupp Manufacturing, Inc.,* 285 Minn. 32, 38, 171 N.W.2d 201, 205 (1969). *Cf. Land O'Lakes Creameries, Inc. v. Hungerholt,* 319 F.2d 352, 359–60 (8th Cir. 1963); *McCormack v. Hankscraft Co.,* 278 Minn. 322, 332, 154 N.W.2d 488, 496 (1967). *See also Sterling Drug, Inc. v. Yarrow,* 408 F.2d 978, 992–93 (8th Cir. 1969). *See generally* Restatement (Second) of Torts §§ 388, 394, 402A (1965);[5] 2 R. Hursh & H. Bailey, American Law of Products Liability § 8:3 (2d ed. 1974). Asbestos insulation is a product that has been held to be susceptible to this standard. *See Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir. 1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

██ As Judge Wisdom pointed out in *Borel,* "a product is unreasonably dangerous only when it is 'dangerous to an extent beyond that contemplated by the ordinary consumer who purchases it.' " 493 F.2d at 1088 (Quoting Restatement (Second) of Torts § 402A, Comment i).

---

4. Since this is a diversity case, we apply the substantive law of Minnesota, the forum state. *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. Comment j to Section 402A states:

In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on. the container, as to its use.

Thus, a product may be unreasonably dangerous because the manufacturer has failed to give adequate warnings of known or knowable dangers involved.

■ Of course, a manufacturer is only required to warn of foreseeable dangers. *O'Hare v. Merck & Co.*, 381 F.2d 286, 291 (8th Cir. 1967); *Westerberg v. School District No. 792*, 276 Minn. 1, 7–8, 148 N.W.2d 312, 317 (1967).[6] As Judge Matthes wrote in *O'Hare v. Merck & Co., supra*, 381 F.2d at 291, a Minnesota diversity case:

A manufacturer is held to the skill of an expert in its particular field of endeavor, and is obligated to keep informed of scientific knowledge and discoveries concerning that field. * * The manufacturer is held accountable as an expert in its field only for those dangers of which it has knowledge or those which it could discover through the exercise of reasonable care. Liability will not attend those injurious consequences resulting from the use of a product, the harmful effects of which 'no developed human skill or foresight can afford knowledge.' *Ross v. Philip Morris & Company*, 328 F.2d 3, 6 (8th Cir. 1964).

The manufacturer's duty to warn users of the potential danger inherent in its product is commensurate with its actual knowledge of the risk involved to those users or the knowledge constructively imparted to it by available scientific or other medical data. * * * [citations and footnote omitted]

■ The challenged instruction properly informed the jury that Johns-Manville could be held liable for failing to warn if, while held to the "knowledge and skill of an expert", it did not disclose to the public those dangers inherent in its product "that the application of reasonable foresight would reveal." It emphasized that the jury must decide whether Johns-Manville had the requisite knowledge and reminded the jury that Karjala was an installation worker, not a factory worker. The instruction is in accord with the law of Minnesota. We find no error here.

### III.

■ Appellant asserts that Judge Lord's instruction on the statute of limitations was erroneous because it literally told the jury that the statute did not bar Karjala's claim and because the instruction set the date when the statute would begin to run as the date on which Karjala became disabled. We disagree. When read as a whole, *see Alabama Great S. R. R. v. Chicago & N. W. Ry.*, 493 F.2d 979, 984 (8th Cir. 1974); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2556 (1971), the District Court's instruction on the statute of limitations is in accord with Minnesota law.[7]

---

**6.** "The requirement of foreseeability coincides with the standard of due care in negligence cases in that a seller must exercise reasonable care and foresight to discover a danger in his product *and to warn users and consumers of that danger. Davis v. Wyeth Laboratories, Inc.*, 9 Cir. 1968, 399 F.2d 121. *See Basko v. Sterling Drug, Inc.*, 2 Cir. 1969, 416 F.2d 417, 427." *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1088 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) (Emphasis original).

**7.** Judge Lord charged the jury as follows:

Now, with regard to the statute of limitations, the law requires that Mr. Karjala bring his claim to court within six years of the date his claim arises. That is, in order to avoid stale claims, in fairness to the defendant, you shouldn't be able to have a claim and sort of lay in the weeds and wait and wait and wait and then bring it. The defendant might not have any idea what it is about at that time. But they assume that six years is a fair time to wait, and that is what they say, you can't bring it after six years.

His claim arises when the harm to his person becomes evident. However, contracting asbestosis is not a matter of moment, or an occasion, but something which develops over a long period of time. The statute doesn't commence to run against Mr. Karjala until he has contracted the disease of asbestosis, and the process of contracting the disease does not cease until physical impairment manifests itself.

The applicable Minnesota statute, Minn.Stat.Ann. § 541.05(5) (Supp.1975), sets six years as the period within which a cause of action for personal injuries resulting from a defective product must be brought. *See Dalton v. Dow Chemical Co.*, 280 Minn. 147, 158 N.W.2d 580 (1968); *American Mutual Liability Insurance Co. v. Reed Cleaners*, 265 Minn. 503, 122 N.W.2d 178 (1963). We recently examined the commencement of the statute of limitations in Minnesota and concluded that:

> [i]n Minnesota, * * * the statute does not begin to run until damage has resulted. It is not necessary for the final or ultimate damages to be known or predictable, however, the statute begins to run when some damage occurs which would entitle the victim to maintain a cause of action.

*Continental Grain Co. v. Fegles Construction Co.*, 480 F.2d 793, 797 (8th Cir. 1973).

Thus, under Minnesota law, an instruction on the statute of limitations must be couched in terms of when damage has resulted from the alleged breach of duty, that is, the time when a claim could be brought in a court of law

without dismissal for failure to state a claim; in a personal injury action this occurs when some harm or impairment has manifested itself which can be shown to have been caused by an act or omission for which the defendant would be liable. *See Dalton v. Dow Chemical Co., supra*, 280 Minn. at 153, 158 N.W.2d at 584; *Bachertz v. Hayes-Lucas Lumber Co.*, 201 Minn. 171, 275 N.W. 694 (1937). This is precisely the substance of the challenged instruction. We do not agree with Johns-Manville that the use of "disabled" and "disability" in the instruction implied that Karjala had to be totally incapacitated before the statute of limitations would commence. Rather, those terms were properly used as synonyms for "harm" or "impairment". *See* Webster's Third New International Dictionary, at 642 (1966).

As in silicosis cases, *see Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), there is rarely a magic moment when one exposed to asbestos can be said to have contracted asbestosis; the exposure is more in the nature of a continuing tort. It is when the disease manifests itself in a way which supplies some evidence of causal rela-

> In other words, the disease must have progressed to a stage where Mr. Karjala would have a provable legal claim for his injuries, to the point when he would have a provable claim that he could go into court and prove. Now, if you find that he could have brought a case for asbestosis during that period of time that he continued to work and could have put in a claim and would and should have known that he had a claim based on reasonable expectation and so forth, then he had to bring it within six years of 1972— what is that date?
> MR. LOUISELL: February 23rd, 1971, was when he commenced it.
> THE COURT: Thank you.
> MR. LOUISELL: So, I guess, six years before that would be February the 23rd, 1965.
> THE COURT: All right. Well, that is for you to decide, whether or not the statute of limitations has barred this claim. That is your decision based on the facts that you have. It is not my decision. I just want you to understand that now.
> Nothing I have said to you or will say to you will direct a verdict in this case. Every

> issue is open for you to decide one way or the other.
> * * * * * *
> I called my law clerk over here to find a little page that I did find, and the fact that I read this last makes no difference. The order in which the instructions are given makes no difference whatsoever. So don't overemphasize this. But here was another way I had of saying this question of the statute of limitations. The jury will have to determine whether or not in 1959 or 1961 or at some time previous to the date mentioned here, 1965, based upon what was then known by this man he could with some degree of success prove that he was disabled, the source of his disability and the other elements that go to make up a case. And that is what we talked about. The first time all these elements coalesced and came together to give him a cause of action, from that date the cause of action would run, the statute of limitations.

tionship to the manufactured product that the public interest in limiting the time for asserting a claim attaches and the statute of limitations will begin to run. The time at which Karjala's impairment manifested itself was, of course, for the jury to determine. As we noted earlier in point I, the limited nature of our review precludes an examination of the sufficiency of the evidence upon which the jury rejected the defense based upon the statute of limitations. We simply hold that the instructions on this point, taken as a whole, adequately and fairly instructed the jury under Minnesota law.

The judgment of the District Court is affirmed.