Eugene BERTRAND, Plaintiff,

v.

JOHNS–MANVILLE SALES CORPORA-
TION, et al., Defendants.

Civ. No. 5–80–33.

United States District Court,
D. Minnesota,
Fifth Division.

Jan. 11, 1982.

Paul J. Louisell, Duluth, Minn., for plain-
tiff.

Thomas Thibodeau, Johnson, Fredin, Kil-
len, Thibodeau & Seiler, Duluth, Minn., for
Johns-Manville Sales Corp.

John Borger, Faegre & Benson, Minneap-
olis, Minn., for Owens-Corning Fiberglas
Corp.

Duane Arndt, Arndt & Benton, P. A.,
Minneapolis, Minn., for Eagle-Picher Indus-
tries, Inc.

**540**

James R. Gray, Gilmore, deLambert, Aafedt, Eustis & Forde, P. A., Minneapolis, Minn., for Forty-Eight Insulations, Inc.

Mark Wine and Catherine Cella, Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapolis, Minn., for GAF Corp.

Jonathan Sippel, Bloomington, Minn., for Ryder Industries, Inc.

Mark Sullivan, Lommen, Nelson, Sullivan & Cole, P. A., Minneapolis, Minn., for Nicolet Industries.

Richard P. Mahoney, Mahoney, Dougherty & Mahoney, Minneapolis, Minn., for Fibreboard Paper Products Corp.

Tyrone Bujold, Hanft, Fride, O'Brien & Harries, P. A., Duluth, Minn., for UNARCO Industries, Inc.

John S. Mathias, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, Minn., for Philip Carey Corp.

Bradley M. Jones, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendant Standard Asbestos Mfg.

Richard T. McHaffie, Joyce & McHaffie, St. Paul, Minn., for Keene Corp.

Louis R. Tilton, Jardine, Logan & O'Brien, St. Paul, Minn., for Combustion Engineering.

Arnold Larson, Donovan, McCarthy, Crassweller, Larson & Magie, Duluth, Minn., for Armstrong Cork Co.

George S. Roth, Austin, Roth, Sunde, McDonough & Tierney, P. A., Minneapolis, Minn., for Southern Asbestos Co.

Eugene D. Buckley, Collins, Buckley, Sauntry & Haugh, St. Paul, Minn., for Pittsburg-Corning.

John M. Anderson, Bassford, Heckt, Lockhart & Mullin, P. A., Minneapolis, Minn., for Atlas Turner.

Norman W. Larsen, Ochs, Larsen, Klimek & Peterson, Minneapolis, Minn., for Walker Jamar Co.

Jerome B. Pederson, Fredrickson, Byron, Colborn, Bisbee & Hansen, Minneapolis, Minn., for Asbestos Corp. Ltd.

Robert F. Berger, Trent, Saxhaug, Berger, Roche, Stephenson, Richards & Aluni, Ltd., Virginia, Minn., for Western Insulation Co.

John Parrington, Minneapolis, Minn., for third party defendant MacArthur Corp.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on a motion by the plaintiff for partial summary judgment. The plaintiff seeks to collaterally estop the defendants from litigating certain issues in this case. All of the defendants take essentially the same position in opposition to the motion. Most of the defendants join in the memorandum submitted by defendant Johns-Manville Sales Corp.

FACTS

The plaintiff, Eugene Bertrand, maintains that he worked with and in close proximity to asbestos products in the course of his job as an insulator. He contends that he has contracted pulmonary fibrosis and other damage to his lungs or chest cavity, and that this injury was caused by the inhalation of asbestos dust.[1]

The plaintiff alleges that he came into contact with unsafe amounts of asbestos dust through the fault of the defendants. The asserted theories of liability are negligence and strict liability in tort. With respect to the negligence theory, the plaintiff alleges that the defendants were negligent in failing to warn of the dangers associated with asbestos dust, and that the defendants reasonably should have foreseen the dangers. With respect to the strict liability theory, the plaintiff will have to prove the following elements:

1. Asbestos dust is a competent producing cause of certain lung diseases, including asbestosis and mesothelioma;

2. The plaintiff contracted asbestosis, mesothelioma, or another disease of

---

1. It is unclear whether Bertrand claims to have either asbestosis or mesothelioma.

the lungs or chest cavity which can be caused by asbestos dust;

3. The defendants manufactured, sold, marketed, distributed, or placed in the stream of commerce products containing asbestos;

4. The products containing asbestos are unreasonably dangerous;

5. The plaintiff was exposed to the defendant's products;

6. The exposure was sufficient to be a producing cause of asbestosis, mesothelioma, or the particular disease that the plaintiff has; and

7. The plaintiff suffered damage.

*Flatt v. Johns Manville Sales Corp.*, 488 F.Supp. 836, 838 (E.D.Tex.1980); *see* Restatement (Second) of Torts § 402A(1) (1965).

There have been many lawsuits between persons situated similarly to the plaintiff here and the companies that manufacture asbestos products. Only a small percentage of the cases have gone to trial. Of those that have gone to trial, at least two have resulted in plaintiff's verdicts. These two cases are *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), and *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155 (8th Cir. 1975). In the motion now before the Court, the plaintiff relies upon these two cases as the basis for his argument that the defendants should be collaterally estopped from litigating several issues.

In *Borel*, the plaintiff was an insulator who claimed that the failure of the defendants to warn of the dangers of asbestos caused his injuries. The trial judge instructed the jury on two general theories of liability. On the negligence theory of liability, the jury found, in a general verdict, that most of the defendants were negligent. However, it also found the plaintiff to be contributorily negligent. The second theory was a combination of breach of implied warranties and strict liability in tort. The trial court's instructions equated "unfitness" or "unmerchantability" with "unreasonably dangerous." On appeal, the defendants objected to the use of breach of warranty language in a tort case. The Fifth Circuit ruled that the language was incorrect, but that no prejudice resulted to the defendants by the use of the warranty language. 493 F.2d at 1091. With respect to the strict liability claim, the plaintiff argued to the jury that the defendants' products were unreasonably dangerous because the defendants failed to warn of the risks inherent in asbestos products, and that these risks were reasonably foreseeable. The jury found six of the defendants liable under this theory, and fixed $79,436.24 as the amount of damages. The six defendants were Fibreboard Paper Products Corp., Johns-Manville Products Corp., Pittsburgh Corning Corp., Philip Carey Corp., Armstrong Cork Corp., and Ruberoid Corp., a Division of GAF Corp. The *Borel* verdict was upheld on appeal.

The *Karjala* case arose in the District of Minnesota. The plaintiff was an installer of asbestos insulation who contracted asbestosis. He sued several manufacturers of asbestos products, but all except Johns-Manville Products Corp. were dismissed prior to trial. At the trial, he asserted and prevailed on a theory of strict liability. On appeal, Johns-Manville challenged the trial court's instruction on the manufacturer's duty to warn. The Court of Appeals for the Eighth Circuit stated:

Under Minnesota Law, a manufacturer has a duty to warn users of its products of all dangers associated with those products of which it has actual or constructive knowledge. Failure to provide such warnings will render the product unreasonably dangerous and will subject the manufacturer to liability for damages under strict liability in tort. [Citations omitted.] Asbestos insulation is a product that has been held to be susceptible to this standard. *See Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

523 F.2d at 158. The Court of Appeals held that the jury had been properly instructed that a manufacturer is held to the skill of

an expert in its field for determining the potential dangers of the product, and that the jury must decide whether Johns-Manville had failed to disclose dangers in the product that it could reasonably foresee. By finding in favor of the plaintiff, the jury in the *Karjala* case found that Johns-Manville either knew or should have known of the danger of its product, yet failed to warn users of the danger.

In addition to *Borel* and *Karjala*, a number of unreported cases have been tried to juries and verdicts in favor of the defendants have been returned. However, the cases were submitted to the juries for general verdicts rather than special verdicts. Therefore it is impossible to determine which of the defenses were successful.

 On the instant motion for partial summary judgment, the plaintiff seeks a ruling that the *Borel* and *Karjala* cases collaterally estop the defendants from litigating several issues. First, the plaintiff asks the Court to rule that asbestos dust is a competent producing cause of certain lung diseases, including asbestosis and mesothelioma. Second, the plaintiff argues that the Court should preclude the defendants from presenting evidence on a defense known as the "state of the art" defense.[2] Third, the plaintiff argues that the *Borel* and *Karjala* verdicts preclude the defendants from asserting that their products were not unreasonably dangerous. They ask that the Court preclude the defendants from litigating this issue.

## DISCUSSION

The three issues the plaintiff seeks to preclude the defendants from litigating are distinct, yet closely related. Two are elements which the plaintiff must prove to prevail against the defendants on the strict liability in tort theory. The first of these issues—whether asbestos is a competent producing cause of certain diseases—relates to the existence of a duty owed by the defendants to the plaintiff. The second—whether the defendants' products were unreasonably dangerous because of the lack of a warning—relates to whether the defendants breached a duty owed to the plaintiff. The third issue the plaintiff seeks to collaterally estop the defendants from litigating—the "state of the art" defense—is a defense to one or more elements of the plaintiff's claim. Even if the defendants are collaterally estopped on these issues, the plaintiff still would have to prove several other elements at the trial, i.e., that the defendants manufactured and sold products containing asbestos, that the plaintiff was exposed to those products, that the exposure was sufficient to cause a disease, that the plaintiff contracted a disease, and that the plaintiff suffered damages.

 The traditional rule of mutuality of judgment as a prerequisite to the use of collateral estoppel has given way to a more flexible approach to mutuality.[3] The Re-

2. The defendants, as manufacturers of a product put on the market, are held to possess the skill of an expert in the field and are obligated to keep informed of scientific discoveries in the field. The manufacturer has a duty to warn its customers of the reasonably foreseeable risks inherent in its products. This duty is commensurate with the manufacturer's actual knowledge of the risks or the knowledge constructively available to the manufacturer in scientific or medical data. *Karjala v. Johns-Manville Products Corp.*, 523 F.2d at 159; *O'Hare v. Merck & Co.*, 381 F.2d 286, 291 (8th Cir. 1967). Thus, the medical literature regarding the risks of asbestos dust helps define the manufacturer's duty to warn. If reliable medical data indicating that breathing asbestos dust increased the hazards of contracting asbestosis or mesothelioma became available forty years ago, then the manufacturer should have begun

warning of the hazard forty years ago. In other words, the "state of the medical art" is relevant to the scope of the manufacturer's duty to warn. In the instant motion, the plaintiff contends that the verdicts in *Borel* and *Karjala* necessarily include a finding by the jury that enough reliable medical data to create a duty to warn became available long before the defendants began to include warnings on their products. The plaintiff argues that the defendants in the case now before the Court should be bound by this implicit finding of the juries in *Borel* and *Karjala*.

3. The Court has subject matter jurisdiction over this case based on diversity of citizenship. Both the plaintiff and the defendants assert, without discussion, that the Court should apply Minnesota law on the issue of collateral estop-

statement (Second) of Judgments has adopted a liberal approach that does not draw sharp distinctions between offensive and defensive use of collateral estoppel.

A party precluded from relitigating an issue with an opposing party, in accordance with §§ 68 and 68.1, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. . . .

Restatement (Second) of Judgments § 88 (Tent. Draft No. 2, 1975). In the 1971 decision of *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1970), the United States Supreme Court permitted defensive use of collateral estoppel despite a lack of mutuality. Although some of the sweeping language of the opinion suggested that it would also sanction offensive use of collateral estoppel, 402 U.S. at 328–29, 91 S.Ct. at 1442, the Court cautioned:

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to

present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

402 U.S. at 329, 91 S.Ct. at 1443.

■ In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 522 (1979), the issue of offensive use of collateral estoppel was squarely presented. The Supreme Court declined to either prohibit or wholeheartedly approve the offensive use of collateral estoppel. Rather, the Court held:

> We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

pel pursuant to *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1939). However, the authorities differ on the issue of whether a federal court sitting in diversity jurisdiction should apply the state or the federal rule regarding the collateral estoppel effect of a prior federal diversity decision. *Compare Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *appeal dismissed*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975), and *Willis v. Fournier*, 418 F.Supp. 265 (M.D.Ga.), *aff'd without opinion*, 537 F.2d 1142 (5th Cir. 1976) (applying federal law of res judicata and collateral estoppel), *with McCarty v. Johns-Manville Sales Corp.*, 502 F.Supp. 335, 338–39 (S.D.Miss.1980) (applying state law of collateral estoppel).

The Minnesota Supreme Court has long rejected the rule that strict mutuality is required before collateral estoppel can be invoked. *Travelers Insurance Co. v. Thompson*, 281 Minn. 547, 163 N.W.2d 289 (1968), *appeal dismissed*, 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969); *Lustik v. Rankila*, 269 Minn. 515, 131 N.W.2d 741 (1964); *Gammel v. Ernst & Ernst*, 245 Minn. 249, 72 N.W.2d 364 (1955). The Restatement (Second) of Judgments, § 88 (Tent. Draft No. 2, 1975) also rejects the rule of strict mutuality. Section 88 sets forth a flexi-

ble approach for deciding when collateral estoppel should not be applied in cases where there is a lack of mutuality of parties. In addition, the United States Supreme Court has in recent years filed two major decisions approving both offensive and defensive uses of collateral estoppel absent mutuality of parties. *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 522 (1979). The *Parklane Hosiery* case drew heavily from the Restatement (Second) of Judgments and adopted a position essentially the same as section 88 of the Restatement. It seems quite likely that the Minnesota Supreme Court will not only continue to adhere to its prior approach of rejecting the rule of strict mutuality, but will also amplify on its prior decisions by looking to the flexible approach set forth in section 88 of the Restatement and the *Parklane Hosiery* decision for guidance in its future decisions on the issue of offensive use of collateral estoppel. Therefore, the Court concludes that the state and federal law are essentially identical in these cases, and it is unnecessary to choose between the two bodies of law.

439 U.S. at 331, 99 S.Ct. at 651 (footnote omitted). The opinion directs trial courts to consider such factors as whether the plaintiff could easily have joined in a prior action, whether use of offensive estoppel would promote judicial economy, whether a defendant in the first action had incentives to defend vigorously, whether future lawsuits were foreseeable, whether the prior judgment relied upon is inconsistent with other judgments, and whether the second action affords the defendant significant procedural opportunities that were unavailable in the first action. In summary, a trial court must examine the circumstances in each case to determine whether there is present any important policy or equitable factor which counsels against offensive estoppel.

■ In this case, it is clear that it is appropriate to estop litigation on the issue of whether asbestos dust can cause diseases such as asbestosis and mesothelioma. This proposition is so firmly entrenched in the medical and legal literature that it is not subject to serious dispute. Indeed, the attorney for defendant Johns-Manville concedes that asbestos dust can be a cause of asbestosis and mesothelioma. In *Hardy v. Johns-Manville Sales Corp.*, 509 F.Supp. 1353 (E.D.Tex.1981), *appeal docketed*, No. 81–2204 (5th Cir. May 29, 1981), it was held:

> Ten years after *Borel*, it cannot be seriously argued that asbestos exposure causes disease. So comfortable are we with that assertion, that a former Secretary of Health, Education and Welfare estimated that more than 67,000 human lives are taken each year by asbestos-related cancers.[3] Thus far in the litigation, asbestos has been found to be a competent producing cause of asbestosis and mesothelioma. *Borel, supra.*
>
> Pulmonary asbestosis can best be described as a nonmalignant scarring of the lungs.[4] Asbestosis is generally cumulative; the continued exposure to asbestos dust and fibres increases both the risk and the severity of the disease. *Borel, supra.* Its latent period makes it legally and medically impossible to state with certainty when asbestosis was first contracted or which exposure to asbestos caused or contributed to the disease.[5] Knowledge of the danger can be attributed to the industry as early as the mid-1930's,[6] and the conduct throughout the industry despite the danger has been summarized as one of indifferent silence. *Borel, supra.*
>
> The industry was also silent with respect to the dangerous relationship between asbestos and cancer. Mesothelioma is a form of malignant tumor of the chest and lungs; it may also effect [sic] the abdomen.[7] Extraordinarily painful and always fatal, it is a relatively rare form of cancer whose relationship to asbestos has been generally known since the late 1930's.[8] Like asbestosis, mesothelioma has a long latent period. *Borel, supra.* Rather unlike asbestosis, mesothelioma may result from one exposure to asbestos dust or fibres.[9]
>
> [3] Joseph A. Califano, *Hartford Courant*, Sept. 12, 1978, as quoted in 7 Fordham Urban L.J. 55 (1978).
> [4] Comment, "Asbestos Litigation: The Dust Has Yet to Settle," 7 Fordham Urban L.J. 55 (1978).
> [5] *Borel, supra.*
> [6] Lanza, "Effects of the Inhalation of Asbestos Dust on the Lungs of Asbestos Workers," 50 PUBLIC HEALTH REPORTS at 6, 7 (1935).
> [7] Selikoff & Hammond, "Asbestos-associated Disease in the United States Shipyards," 28 CA—A CANCER J. FOR CLIN. 87 (1978).
> [8] *Fordham, supra* note 4, at 59.
> [9] New York Academy of Sciences, Cancer and The Worker, 50 (1977).

509 F.Supp. at 1354–55. *See Borel v. Fibreboard Paper Products Corp.*, 493 F.2d at 1083–87. In *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155 (8th Cir. 1975), the trial court's instructions to the jury included: "It is admitted that Johns-Manville knew as early as 1942 that asbestos would cause asbestosis when inhaled by factory workers." 523 F.2d at 158. In view of this, the Court will instruct the jury that asbestos dust is a competent producing cause of asbestosis and mesothelioma.[4]

■ As to the other two issues, however, the Court finds that it would be inappropri-

---

**4.** This ruling is limited to asbestos dust. There

is no issue now before the Court regarding the

ate to apply collateral estoppel at this time. Many of the defendants in this case were not involved in either the *Borel* or *Karjala* trials. To apply collateral estoppel here would violate their rights to due process. The Court is unwilling to foreclose those defendants from having their day in court on the state of the art defense or on the issue of whether their products were unreasonably dangerous. Bifurcating the trial between those few defendants present in *Borel* or *Karjala* and those not present would require more time and effort than applying collateral estoppel would save.[5]

Accordingly,

IT IS ORDERED that the plaintiff's motion for partial summary judgment insofar as it relates to the issue of whether asbestos dust is a competent producing cause of asbestosis and mesothelioma is granted, and the defendants are hereby prohibited from litigating this issue.

IT IS FURTHER ORDERED that the plaintiff's motion for partial summary judgment is in all other respects denied.

effect of ingestion of asbestos particles, such as through food or water. In addition, this ruling does not hold that asbestos dust is the *only* cause of asbestosis or mesothelioma, but only that it can be *a* producing cause.

**5.** After the time this memorandum was written, the Fifth Circuit's decision in *Migues v. Fibreboard Corp.*, 662 F.2d 1182 (5th Cir. 1981), came to the attention of the Court. The Court finds that its decision is not inconsistent with the holding of the Fifth Circuit in *Migues.*