**Tyrone TYLER, Appellant,**

v.

**HOT SPRINGS SCHOOL DISTRICT NO. 6; Dale Cook; Orville Poole and Doris Qualls, Individually and as Members of the Board of Directors of Hot Springs School District No. 6 and Delbert Garner, Individually and as Principal of Hot Springs School District No. 6, Appellees.**

**No. 86–1905.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1987.

Decided Sept. 4, 1987.

---

John W. Walker, Little Rock, Ark., for appellant.

Dan F. Bufford, Little Rock, Ark., for appellees.

Before ROSS,[*] Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Tyrone Tyler brought this action under 42 U.S.C. §§ 1981 and 1983 (1982), claiming that because he is black the Hot Springs School District No. 6[1] did not renew his employment contract as band director at one of the School District's junior high schools. He argues on appeal that the district court[2] committed reversible error in giving improper jury instructions and in refusing to allow Tyler to introduce evidence concerning the conduct of the white teacher who replaced him as band director. He also argues that the evidence was insufficient to support the jury's verdict. We affirm.

In August 1982, Tyler began his employment with the School District as band director of Southwest Junior High School in Hot Springs, Arkansas. Tyler was qualified for the position. He held a doctorate from New York University in music education and had taught music in several other schools before returning home to teach in Hot Springs. During the 1982–83 school year, problems developed between Tyler and Delbert Garner, the principal of

---

[*] The Honorable Donald R. Ross, active Judge of this court at the time this case was submitted, took senior status on June 13, 1987, before this opinion was filed.

1. Because the issues raised in this appeal similarly affect each appellee, we refer to the appellees collectively as the School District.

2. The Honorable Oren Harris, United States District Judge for the Eastern District of Arkansas.

Southwest Junior High School and Tyler's immediate supervisor. In April 1983, Garner recommended to the School District's assistant superintendent that Tyler's teaching contract not be renewed. The recommendation letter, which was signed by Garner and Assistant Principal Martha Coble, cited numerous factors supporting the recommendation.[3] Tyler contended that Garner's recommendation lacked factual support and was based on subjective criteria. Tyler pointed to the written evaluation given to all teachers in the School District. That evaluation scores each teacher from "one" ("good") to "four" ("unsatisfactory") on a number of matters relating to the teacher's personal qualities, professional qualities, and professional effectiveness. On April 1, 1983, three days before Garner recommended nonrenewal, Tyler received an overall evaluation of 1.7, which placed him between "good" and "average." After receiving Garner's recommendation, the School District's board of directors decided not to follow it and instead voted to renew Tyler's contract.

The problems between Tyler and his supervisors continued into the 1983–84 school year. In September 1983, Tyler met with Garner to discuss certain incidents including, according to Garner, Tyler's leaving campus unannounced while on duty, threatening students with physical retaliation and their parents with legal action in response to complaints regarding Tyler's performance, and allowing students to smoke in the band room. Garner offered Tyler several suggestions to resolve these problems. According to Garner, the problems persisted, and on March 2, 1984 Garner and Tyler again met to discuss certain concerns and possible solutions. Finally, on April 11, 1984, Garner recommended to the assistant superintendent that Tyler's contract not be renewed, stating in his recommendation letter that:

My reasons for this recommendation are: (1) Parental concern over the lack of order and consistency in the band program. (2) Lack of consistent concern and care of equipment and band facilities. (3) The band program is very loosely structured. (4) The director does not provide the type of leadership and command the type of respect from students and parents that provides for a quality program. (5) Lack of organizational skills.

Some of the specific instances or occurrences included in these reasons are: Improper discipline methods used, language directed at students, failure to maintain order and control of classroom, neglect in turning in required reports, information and entries for activities, allowing band equipment, room and materials to be damaged or destroyed, not following procedures regarding transportation, leaving campus, issuance of uniforms and

---

3. The letter states that the following factors support the decision to not renew Tyler's contract:
Lack of classroom management skills:
1. Constant problems of recording attendance and issueing [sic] cards.
2. Lack of promptness in showing up for duty, class.
3. Never checks mailbox of [sic] adheres to memoes [sic].
4. Doesn't understand chain of command in doing things—(scheduling) (practice of band students) (holds students in his classes after the bell rings)
5. Did not take band students to regional tryouts—did not tell principal.
6. Inability to keep records—has forgotten on occasion to issue report cards to students, in fact, left student off roll book—wasn't aware student was in his class.
7. Does not seem to understand the total school program or that each department compliments [sic] the others.

Irresponsibility of handling students under his supervison:
1. No supervisory skills concerning students coming or going from class, has no knowledge of their whereabouts.
2. No classroom disciplinary skills—students run class.
3. Students out of class without his knowledge while under his direct supervision (leaving campus on several occasions)
4. Students wander campus from his class—his statement was "If you get caught I don't know anything about it".
5. Has on occasion left classes unattended and unsupervised. (We're liable for this)
6. Loaned keys to college student to conduct private lessons in bamd [sic] room on weekends and night sessions. He was not in attendance on these occasions.

being absent without knowledge of administrators.

Once again, Tyler, whose overall evaluation for the 1983–84 school year was 1.93, argued that Garner's recommendation lacked foundation. Tyler presented his defense at a hearing before the School District's board of directors on May 9, 1984. After the hearing, the board of directors voted four to two in favor of nonrenewal.

Tyler brought an action in the district court contending that the School District discriminated against him on the basis of his race in refusing to renew his contract. After a five-day trial, the jury found that race was not a determining factor in the nonrenewal decision. The district court entered judgment in the School District's favor, and this appeal followed.

## I.

 Tyler first argues that the jury instructions regarding liability and causation were erroneous. The district court instructed the jury to answer an interrogatory that asked whether "discrimination against the plaintiff because of his race was a determining factor in all or some of the defendants' decision of nonrenewal of the plaintiff's contract for the 1984–85 school year." Tr. 1155. At several other points in the instructions, the court reiterated that the jury was to decide whether Tyler's race was "a determining factor" in the employment decision. Tyler objected to this interrogatory and these instructions, arguing that mixed motives played a part in the employment decision, and therefore, based on *Bibbs v. Block*, 778 F.2d 1318 (8th Cir.1985), the jury should have been asked whether race was "a factor" (as opposed to

"a determining factor") in the decision to not renew Tyler's contract.[4]

*Bibbs v. Block* is not applicable for a number of reasons. In *Bibbs* this court en banc held that the language of Title VII, specifically 42 U.S.C. §§ 2000e–2(a) and –5(g), authorizes declaratory or injunctive relief, but not retroactive promotion, reinstatement, or back pay, when there is a finding in a mixed-motive case that an unlawful motive was a "discernible factor" in the employment decision, but not a "determining" or "but-for" factor. 778 F.2d at 1320–24. Here Tyler does not assert a claim under Title VII; the jury was instructed solely on his claims for damages caused by constitutional and section 1983 violations.[5] We were careful in *Bibbs* to distinguish our Title VII analysis from the analysis in cases, such as *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), where a plaintiff seeks damages for a constitutional violation. In *Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir.1986), we applied the principles of these latter cases to an employment race discrimination case, expressly rejecting the need for a dual *Bibbs*-type finding when a plaintiff seeks relief for a violation of his constitutional rights. *Id.* at 1233, 1233 n. 7. A constitutional race discrimination claimant is entitled to relief only if race was a motivating or determining factor in the employment decision. *Id.* at 1233 (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. at 265–66, 97 S.Ct. at 563–64); *cf. Mt. Healthy City School Dist. Bd. of Educ. v.*

---

4. Tyler also points to a statement instructing the jury that it must decide whether race was "the determining factors [sic]." He argues that this statement prompted the jury to decide whether race was the sole determining factor in the employment decision. Reviewing the jury instructions as a whole, as we must, *e.g., Grinder v. Southern Farm Bureau Casualty Ins. Co.*, 590 F.2d 741, 743 (8th Cir.1979), we do not believe that this isolated instruction—a misstatement by the trial judge, the School District avers, which deviated from the parties' jointly submitted jury instructions—altered the jury's understanding

that it was to decide whether Tyler's race was a factor that determined the outcome of the employment decision. On every other occasion, the court used the "a determining factor" standard, and most importantly, this standard was contained in the interrogatory with which the jury decided the issue.

5. While Tyler sought injunctive relief and attorney's fees, these requests were rejected by the district court based upon findings made following the jury verdict, and Tyler has not attacked this portion of the judgment.

*Doyle,* 429 U.S. at 285–87, 97 S.Ct. at 575–76 (formulating "a test of causation which distinguishes between a result caused by a constitutional violation and one not so caused"). If a jury were instructed that the claimant could recover if the constitutional violation was "a factor" or "a discernible factor" in the employment decision, this "could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Mt. Healthy,* 429 U.S. at 285, 97 S.Ct. at 575. On the other hand, an instruction that requires the unlawful motive to be a determining or motivating factor in the employment decision "protects against the invasion of constitutional rights without commanding undesirable consequences not necessary to the assurance of those rights." *Id.* at 287, 97 S.Ct. at 576.

■ Tyler's second argument regarding the jury instructions is that the district court erred in not instructing the jury on Ark.Stat.Ann. § 80.1266.6, the section of the Arkansas Teacher Fair Dismissal Act that requires a school administrator to provide written notice to a teacher having problems that could lead to nonrenewal and to document the efforts undertaken to assist the teacher in correcting the problems.[6] Tyler did not bring a pendent cause of action under the Arkansas Teacher Fair Dismissal Act, and the jury was not instructed that Tyler could recover under the Act. He argues on appeal, however, that the School District violated section 80–1266.6, and this violation should have been specifically considered by the jury as bearing on the School District's discriminatory intent. In essence, therefore, Tyler is arguing that the jury instructions regarding intent were deficient.

The district court instructed the jury that in deciding whether race was a determining factor in the employment decision, it could "consider any statement made or act done or omitted by a party whose intent is an issue and all other facts and circumstances which indicate his state of mind." Tr. 1168. Section 80–1266.6 relates to one type of conduct the jury could have considered in assessing the intent of some of the defendants. But there are numerous other statements, acts, facts, and circumstances that would have had the same or greater bearing on this assessment. When a court singles out evidentiary features and emphasizes them by special instruction, it tends to mislead the jury. *Vanskike v. ACF Indus., Inc.,* 665 F.2d 188, 202 (8th Cir.1981), *cert. denied sub nom. St. Louis-San Francisco Ry. Co. v. Vanskike,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). If the district court had specifically directed the jury to consider whether at any time during Tyler's tenure the School District violated section 80–1266.6, this would have placed undue emphasis on the evidence relating to that issue at the expense of the remaining evidence bearing on the intent of the various defendants. *See id.* at 201 ("A court should go as far as possible to avoid giving undue prominence to a particular theory."); *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 519 (8th Cir.) (instruction placed undue emphasis on a matter favorable to one party's case), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *cf. Haynes v. American Motors Corp.,* 691 F.2d 1268, 1275 (8th Cir.1982) (rejecting argument that instruction unduly emphasized certain defense). Furthermore, an instruction on section 80–1266.6 could well have confused the ultimate factual issue; a determination that the School District did or did not violate section 80–1266.6 would have had only a slight bearing on whether race was a determining factor in the employment decision regarding Tyler. *Cf. Peterson v.*

---

6. Section 80–1266.6 states in part:
 Whenever a superintendent or other school administrator charged with the supervision of a teacher believes or has reason to believe that a teacher is having difficulties or problems meeting the expectations of the district or its administration and the administrator believes or has reason to believe the problems could lead to termination or nonrenewal of

 contract, the administrator shall bring the problems and difficulties to the attention of the teacher involved in writing and shall document the efforts which have been undertaken to assist the teacher to correct whatever appears to be the cause for potential termination or nonrenewal.

 Ark.Stat.Ann. § 80–1266.6 (Supp.1985).

*Auto Wash Mfg. & Supply Co.*, 676 F.2d 949, 952–53 (8th Cir.1982) (no error in instruction that was not "confusing, ambiguous and misleading"); *Putman v. Gerloff,* 639 F.2d 415, 418 (8th Cir.1981) (confusing instructions). Accordingly, we hold that because a jury instruction on section 80–1266.6 could have misled the jury into over-emphasizing certain evidence and because it could have confused an ultimate factual issue, the court did not err in refusing to give such an instruction.

██ Finally, Tyler argues that the court gave an erroneous instruction relating to the School District's asserted legitimate, nondiscriminatory reasons for not renewing Tyler's contract. The district court correctly instructed the jury that if Tyler established a prima facie case, the School District had to articulate some legitimate, nondiscriminatory reason for not renewing Tyler's contract. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court then instructed the jury that, unless pretextual, the following reasons were legitimate:

(1) Parental concern over lack of order and consistency in the band program;

(2) Lack of consistent concern and care of equipment and band facilities;

(3) The band program is very loosely structured;

(4) Plaintiff does not provide leadership or command respect from students and parents that provides for a quality program; and

(5) The plaintiff lacks organizational skills.

Tr. 1167.

Tyler contends that the School District was not entitled to this instruction because it did not produce evidence to support these reasons. *See, e.g., Gander v. Mr. Steak of Sun Ray, Inc.,* 774 F.2d 920, 924 (8th Cir. 1985) ("A party is entitled to an instruction reflecting that party's theory of the case if it is legally correct and there is evidence to support it."). To find evidence supporting this instruction, we need only look to Principal Garner's recommendation letter of April 11, 1984 (quoted earlier in this opinion), which lists the same reasons contained in the disputed jury instruction as the reasons for Tyler's dismissal. Tyler's arguments concerning the propriety of the jury instructions are rejected.

## II.

██ Tyler next contends that the court committed reversible error when it refused to allow evidence in Tyler's case-in-chief of the School District's tolerance of the white teacher who replaced Tyler and who engaged in conduct similar to, if not more egregious than, Tyler's. Clearly, such evidence would be highly relevant to the question of whether the School District's asserted reasons for not renewing Tyler's contract were pretextual. *See McDonnell Douglas Corp. v. Green,* 411 U.S. at 804, 93 S.Ct. at 1825. As Tyler concedes, however, the court allowed Tyler to introduce as rebuttal evidence all the pretext evidence he sought to introduce in his case-in-chief. Appellant's Brief at 24. Thus, Tyler was afforded a full opportunity, albeit at a later stage in the trial, to introduce evidence to prove that the School District's asserted reasons for not renewing Tyler's contract were pretextual. Even if the court's initial ruling was erroneous, it did not ultimately prevent any evidence from reaching the jury, and it was therefore harmless. Fed.R.Civ.P. 61; *see Laney v. Coleman Co.,* 758 F.2d 1299, 1306 (8th Cir.1985); *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 53 (8th Cir.1977).

## III.

Finally, we consider Tyler's argument that the evidence was insufficient to support the jury's verdict. The School District argues that because Tyler never raised this issue in a motion for a directed verdict, a judgment notwithstanding the verdict, or a new trial, he has waived his right to raise it on appeal. It is well settled that when a party fails to raise a sufficiency of the evidence argument in a motion for a directed verdict, a judgment notwithstanding the verdict, or a new trial, an appellate court cannot review the issue, although a few of

our cases state that it may do so on a plain error basis.[7] *E.g., Hollins v. Powell,* 773 F.2d 191, 194 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); *Carter v. Jacobsen,* 748 F.2d 487, 488 (8th Cir.1984); *Shell v. Missouri Pac. R.R. Co.,* 684 F.2d 537, 540 (8th Cir. 1982); *United States v. Bass,* 618 F.2d 500, 503 (8th Cir.1980). "Federal appellate courts simply do not directly review jury verdicts." *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978). We have recently discussed the problems presented when the party having the burden of proof is granted a directed verdict, *Froemming v. Gate City Federal Sav.,* 822 F.2d 723 (8th Cir.1987), and the same concerns apply to such a party seeking direction of a verdict.

■ Tyler argues that the reasons asserted by the School District for his nonrenewal were based on subjective evaluations and, therefore, cannot support the employment decision. This, he contends, leaves us with the quantitative, "objective" evaluations in which his performance was rated between "good" and "average." Accordingly, he argues that in the absence of any legitimate, nondiscriminatory reasons for nonrenewal of his contract the evidence was insufficient to support a finding that race was not a determining factor in the employment decision. While subjective evaluations must be closely scrutinized when they form the basis of asserted legitimate, nondiscriminatory reasons for an employment decision, they do not necessarily render invalid an employer's asserted reasons. *Royal v. Missouri Highway & Transp. Comm'n,* 655 F.2d 159, 164 (8th Cir.1981). The reasons asserted by the School District may have been based partly on subjective considerations, but they were also premised on objective factual observations that clearly constitute legitimate reasons for not renewing Tyler's contract. *Cf. McDonnell Douglas Corp.,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25. Whether we view the issue as plain error in submission of the case, or sufficiency of the evidence to support the jury's verdict, we hold there is no basis for setting aside the jury verdict.

The judgment of the district court is affirmed.

7. The reference to plain error may be quite limited. The statement seems to have its origin in *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155, 157, (8th Cir.1975). There the option of granting a new trial was considered if ther·, was "no evidence at all to support the jury's verdict." *Id.* at 157 n. 2. This possibility may be foreclosed by *Goldsmith v. Diamond Shamrock Corp.,* 767 F.2d 411, 415 (8th Cir.1985).